THE DREDGE NO. 1.

(District Court, S. D. New York. April 25, 1905.)

ADMIRALTY—DISTRIBUTION OF PROCEEDS OF VESSEL—PRIORITY BETWEEN CLAIMS.

On distribution of the proceeds of a vessel sold in admiralty, one who advanced money to pay off a lien for salvage on said vessel, under an agreement that he should be subrogated to such lien, *held* entitled to priority of payment over claims based on prior personal judgments against the owners.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage, § 105.]

In Admiralty. On motion for distribution of fund.

Alexander & Ash, for petitioners Bleakley and the Rodermonds.

James A. Deering, for petitioner Benjamin L. Odell.

ADAMS, District Judge. These are motions for orders of distribution of the proceeds of the sale of Reed Brothers' Dredge No. 1 on the part of Clarence L. Bleakley, Charles B. Rodermond and Clarence T. Rodermond, and Benjamin L. Odell, the various claimants of the fund, amounting to $451.99, now in the registry of the court. The claims are $455, $329.88 and $309.53, aggregating $1,094.41, or $642.42 in excess of the fund. The question to be determined is, what disposition shall be made of the fund in view of the deficiency?

The claim of Bleakley arose out of an assignment of a claim on the part of Merritt & Chapman Derrick & Wrecking Company for salvage services rendered to the dredge. The commissioner describes the transaction as follows:

"I find that on the 21st day of June, 1904, a libel was filed in this court against the Dredge No. 1 by the Merritt & Chapman Derrick & Wrecking Company on a claim of $550 for salvage; that thereafter and on the 21st day of November, 1904, said dredge was attached by the Marshal of this District under and by virtue of a monition issued in accordance with the prayer of said libel; that at said time Ferdinand C. Reed and Edward B. Reed were the owners of said dredge and that Edward B. Reed and the. representatives of his brother who has since died, continued to be the owners thereof until the attachment and sale herein; that on November 26th, 1904, the said Reed Brothers applied to petitioner for an advance of $455 to be used in paying off said salvage claim and securing a release of the dredge from the custody of the Marshal, and agreed that if petitioner would advance the same, he would have an assignment of said lien and a lien upon the dredge as security for the money so advanced; that petitioner thereupon advanced the Reed Brothers the sum of $455 and that the same was used to pay the Merritt & Chapman Derrick & Wrecking Company and the expense of attachment, and the dredge was thereupon released from custody; that no part of said $455 has been paid; that an inspection of the records of this court shows that there is now in the Registry thereof the sum of $451.91, the balance of the proceeds of the sale of said dredge."

The claim of the Rodermonds is described by the commissioner as follows:

"I find that the petitioners herein carried on the business of shipbuilding and repairing vessels in the year 1903 at Tompkins Cove, New York, and that in the months of September and October of said year they made repairs to the Dredge No. 1 of the value of $327.73; that subsequently they brought pro-

ceedings in the United States District Court for the Eastern District of New York for the recovery of said amount, and on the 7th day of July, 1904, a final decree was entered therein against Ferdinand C. Reed, Edward B. Reed and George Marsdorf for the sum of $379.88; that the sum of $50 has been paid on account therein and that the balance of $329.88 still remains due and unpaid; that an inspection of the records of this court shows that there is now in the Registry thereof the sum of $451.91, the balance of the proceeds of sale of said dredge."

The claim of Odell is described by the commissioner as follows:

"I find that in the latter part of March 1904, two proceedings in admiralty were pending in the United States District Court for the District of New Jersey against Ferdinand C. Reed and Edward B. Reed, owners of the Dredge No. 1, and that Benjamin L. Odell became surety therein in each of said proceedings; that in one of said proceedings brought by William Gaskell, et al., a final decree was entered in favor of libellants on September 19th. 1904, for $111.40 and that in the other brought by Samuel Isaksen a judgment for libellant was entered on the same day for $167.60; that subsequently on demand of the United States Marshal for the District of New Jersey, the petitioner paid said Marshal the sum of $309.53, in satisfaction of the execution in his hands issued under said judgment; that on the 9th day of January, 1905, petitioner entered judgment in the New York Supreme Court, County of New York, for the amount so paid, viz., $309.53 against Edward B. Reed and that no part of said judgment has been paid; that at the time of the attachment and sale of the said dredge in this court, the said Edward B. Reed and the estate of his deceased brother Ferdinand C. Reed, were the owners of said dredge; that an inspection of the records of this court shows that there is now in the Registry thereof the sum of $451.91, the balance of the proceeds of sale of said dredge."

These reports have not been excepted to and must be regarded as correct.

It appears that the claim of Bleakley should have precedence over the others. The circumstances under which the money was advanced, subrogate him to all the rights of the assignor, and the fact of such rights being based on salvage entitles the assignee to maritime priority, notwithstanding the existence of the earlier judgments in personam against the owners of the dredge—Collins v. The Ft. Wayne, 6 Fed. Cas. 119. As this claim will absorb the whole fund, it is not necessary to consider the other questions presented.

Decree accordingly.